**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| **ADRIENNE TRICE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 3:10-cv-255** |
| ) | |
| **COLLEEN McEACHEN, Individually, and** ) | **Judge Thomas A. Wiseman, Jr.** |
| **CHET C. MASON, Individually,** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM OPINION**

Plaintiff Adrienne Trice filed this suit originally on February 23, 2010 in the Circuit Court for Robertson County, Tennessee, against defendants Colleen McEachen and Chet C. Mason in their individual capacities, asserting that Defendants had taken adverse action against her in retaliation for her exercise of her First Amendment rights, in violation of 42 U.S.C. § 1983, and had engaged in malicious prosecution in violation of state law.[1] Defendants thereafter removed the matter to federal court.

Defendants have now filed their motion for summary judgment (Doc. No. 12) asserting that they are entitled to summary judgment in their favor as to the First Amendment claim, because the grand jury indictments are conclusive proof of probable cause and because there is no proof of a retaliatory motive. They assert that the common-law claim of malicious prosecution is subject to dismissal because Defendants did not initiate the investigation or make any decisions or recommendations with regard to whether to prosecute the plaintiff. Defendants also assert that they are entitled to judgment in their favor on the grounds of qualified immunity. As set forth herein, the Court finds that Defendants are entitled to summary judgment in their favor.

---

[1] In their motion documents, Defendants assume that Trice also intended to state a federal malicious-prosecution claim, and argue for the dismissal of that claim along with the others. In her response, Trice makes it clear that she intended only to assert a state-law claim of malicious prosecution, and she does not address the Defendants' arguments regarding the federal tort claim. To the extent the complaint may be construed to state a federal malicious-prosecution claim, the Court deems it abandoned and therefore subject to dismissal. Even if Trice had stated a federal malicious-prosecution claim, it would be subject to summary judgment on the same grounds as her First Amendment-retaliation claim: that Trice cannot prove the absence of probable cause to arrest and prosecute her, a necessary element of a malicious-prosecution claim, because the grand jury indictments conclusively establish the existence of probable cause.

I.       STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir. 2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., Federal Practice and Procedure § 2727 (2d ed. 1998).

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*, 475 U.S.at 586.

II.      FACTUAL BACKGROUND

Defendants in this matter are Colleen McEachen and Chet Mason. They are Special Agents with the Tennessee Bureau of Investigation ("TBI") and acted in that capacity at all times relevant to this matter. They are sued in their individual capacities.

On or about November 5, 2008, plaintiff Adrienne Trice, an African American woman, was pulled

over for speeding in Ridgetop, Tennessee by Ridgetop Police Officer Adam Tate. Tate issued citations to Trice for speeding and for failure to have proof of insurance or registration on the vehicle she was driving. During that stop, which was videotaped in its entirety, Trice accused Tate of being a racist. She testified in her deposition that the basis for calling him a racist was "his whole demeanor." (Trice Dep. 66:9.)

The next day, on November 6, 2008, Trice called the Ridgetop Police Department to complain about Tate. She spoke with Police Lieutenant Chuck Williams and reported that Officer Tate had been rude, had frightened her and had behaved inappropriately, and that she believed his behavior was motivated by racism. (Trice Dep. 83:1–9.) She testified that she attributed his treatment of her to racism because "that's the only thing I could think of that would make him treat me that way." (Trice Dep. 83:12–15.) She also told Lt. Williams she believed Officer Tate "just wanted to stop a black person that night" (Trice Dep. 84:8–11), and that she believed "something should be done" about Officer Tate. (Trice Dep. 85:12–16.) She reported that Tate had beat on her car window with his flashlight, and that she believed he "cussed" at her, "using the word 'damn' or 'hell.'" (Trice Dep. 107:17–20.) She called back sometime later to inquire whether any steps had been taken in response to her report, and was told that the Tennessee Bureau of Investigation ("TBI") would be getting in touch with her.

According to Special Agent McEachen, she was informed on or about November 18, 2008, by Assistant District Attorney General B. Dent Morriss that the Ridgetop Police had requested an investigation into the issue of "whether the plaintiff had made a false report against Officer Tate." (12/8/2010 McEachen Aff. ¶ 2.) According to McEachen's deposition testimony, she and Mason were called upon to investigate "the allegations that Ms. Trice made against Officer Tate." (McEachen Dep. 11:22–24.) Morriss has averred that his office asked the TBI to investigate a complaint from the Ridgetop Police Department about a possible false report against a police officer by the plaintiff. (Morriss Aff. ¶ 2.) [2]

_____

[2] Plaintiff asserts that the statement McEachen made in her affidavit—that she and Mason were asked to investigate whether Trice had made a false report—is in conflict with her deposition testimony to the effect that they were called upon to investigate Trice's allegations against Officer Tate. The Court finds that these statements are not, in fact, contradictory. Rather, the deposition testimony is ambiguous and could be construed to mean the investigation was focused on either Trice's statements or Officer Tate's behavior. The affidavit testimony tends to clarify the deposition testimony. In any event, it is clear that when McEachen and Mason arrived at Trice's door to question her about the matter, as discussed below, Trice, at least initially, understood the TBI agents to be investigating Officer Tate, not her, and the TBI agents apparently did nothing to disabuse her of that perception. (*See* McEachen Dep. 30:7–10 ("Q. Did you inform her she was the target of an investigation into whether or not she had committed felony offenses? A. No, we didn't.").)

Morriss contacted McEachen because she was an agent in the area where the incident occurred. Special Agent Mason was actually assigned to the case, but McEachen stayed involved because she was Mason's training officer.

The first step in the investigation was to interview Lt. Williams, who provided McEachen and Mason with "the majority of the facts." (McEachen Dep. 12:14.) On the same date, on or about November 26, 2008, they also reviewed the video/audio recording of the traffic stop and listened to the audiotapes of Trice's telephone conversations with Lt. Williams. The agents also received copies of the citations that Officer Tate had issued to Trice, the report that Tate wrote about the incident, and Lt. Williams' Daily Activity Reports for November 10 and 12, 2008, in which he noted his telephone conversations with Trice. McEachen and Mason later went to the Greenbrier Police Department where they obtained a report from Greenbrier Police Officer David Wright, who had acted as back-up for Officer Tate the night Tate stopped Trice.

The next step was to interview Trice. After leaving the Greenbrier Police Department, McEachen and Mason went to Trice's house to speak to her about the incident and, apparently, for the purpose of obtaining a sworn statement from her regarding the incident. The interview with Trice was not recorded nor, according to Trice, did either agent make contemporaneous notes while speaking with her. Trice was not asked to write out her own version of the night's events.

It is undisputed that Mason and McEachen arrived unannounced at Trice's home on the evening of November 26, 2008. When Trice answered the door, the agents explained they were with the TBI and that they wanted to speak with her regarding the traffic stop of November 5. As previously indicated, McEachen and Mason never informed Trice that she was the target of their investigation. They were invited inside, explained what their procedure was, and undertook to obtain a sworn statement from Trice, who was initially cooperative.

Mason began the interview by administering an oath to Trice, which he did by reading to her from a TBI form. The form, titled "Sworn Statement," states: "Do you, _____, solemnly swear that the statement you are about to give is the truth, the whole truth, and nothing but the truth, so help you God?" (Doc. No. 22-4, and Ex. 2 to McEachen Dep.) Adrienne Trice's name is handwritten in the blank space. "Yes" is handwritten in the space after "ANSWER," and Adrienne Trice's signature attests that she

answered the question affirmatively.  At the bottom of the form, on the same page, are the signatures of Special Agent Mason as the TBI agent who took the statement and Special Agent McEachen as a witness.  The form states that it is taken under the authority of Tenn. Code Ann. § 38-6-102, but also states that it is to be "accompanied by Affidavit."  *Id.*  Contained in pages 2 through 4 of the same document is a handwritten, first-person statement, from Trice's perspective but apparently written by Mason from memory after hearing Trice's verbal account of the event.  Trice made changes throughout the document, which she initialed; she also wrote her initials at the top and bottom of each page, and she signed and dated the document at the end of the statement.  McEachen and Mason also signed the document.  (*See* Doc. No. 22-4, at 2–4.)

> The fifth page of the document is a form Affidavit which states in pertinent part:
>
> I, _____, have read, or have had read to me, this sworn statement which begins on Page one (1) and ends on Page _____.  I fully understand the contents of the entire statement made by me.  The statement is true.  I have initialed all corrections and have initialed the bottom of each page containing the statement.
>
> I have made this statement freely without hope of benefit or reward, without threat of punishment, and without coercion, unlawful influence, or unlawful inducement. . . .
>
> SIGNATURE:_____
>
> This statement sworn and subscribed before me this the _____ day of _____.

(Doc. No. 22-4, at 5.)  Mason signed and dated the form, and filled in Trice's name in the first blank.  Trice apparently started to sign the form but then changed her mind and decided not to sign the affidavit, scratched through the space for her signature, and drew a line through her name written in the first blank.  Mason wrote:  "Refused to sign," and his initials, next to the signature line.  McEachen witnessed and signed this form as well.

In her deposition, Trice acknowledged that she had signed the document on the first and fourth pages, and initialed the form next to changes and at the bottom of each page.  She also stated that she did not really "have a problem" with the report as written by Mason except that it "didn't flow" the same way as her verbal version of the story, and the handwriting was "awful."  (Trice Dep. 100:18, 99:21–22, 102:2.)  When her statement was read aloud to her during her deposition, Trice did not indicate that any portion of it was inaccurate.  Trice admitted that she gave the statement freely, but she also maintained that she felt Mason and McEachen had deceived her by representing that they were there for her, and

insinuated or suggested that Officer Tate's actions were the target of their investigation. Toward the end of the interview, Trice became upset and hostile and ended up asking the agents to leave her house. According to McEachen, the method Mason used to obtain the statement from Trice was consistent with "normal TBI and police procedure." (1/25/2011 McEachen Aff. ¶ 2.)

At some point shortly after the interview with Trice, McEachen presented the case file to Assistant District Attorney General Morriss. McEachen testified via affidavit that when she presented Trice's statement to Morriss, she informed him that (1) she and Mason went to Trice's home unannounced to obtain the statement; (2) before taking the statement, Mason asked Trice to swear that the statement she was about to give was the truth; (3) Mason actually wrote out the statement, but Trice initialed each page, initialed any changes, and signed the last page; (4) Trice refused to sign the affidavit portion of the form even after she had signed the statement itself; and (5) Trice asked Mason and McEachen to leave after she had signed the last page of the statement. (*Id.*) The case file that McEachen handed over to Morriss was the entire case file, including Trice's statement and the unsigned affidavit, the videotape from Officer Tate's vehicle, the audio recordings of Trice's conversations with Lt. Williams about her encounter with Tate, and all the other documents McEachen and Mason had obtained during the course of their investigation. (*Id.*) Neither McEachen nor Mason made any suggestions or recommendations to Morriss or his office as to whether to prosecute Trice, nor did they make any suggestions or recommendations as to what charges to bring in the indictment. (Morriss Aff. ¶ 2.)

The original Indictment was drafted by Morriss's office. It charged Trice with one count of False Reporting and one count of Aggravated Perjury. Morriss's office asked McEachen to present the case to the grand jury on January 21, 2009 because Mason was in in-service training at that time. She did so. On January 22, 2009, the grand jury indicted Trice based on the indictments prepared by the DA's office.

On April 23, 2009, the DA's office amended the charges and drafted an amended indictment. Neither McEachen nor Mason was consulted about the amendment and they did not provide any input into the amended indictment. The amended indictment dropped the charge of Aggravated Perjury and added a second charge of Filing a False Report. Mason was the witness for the amended indictment.

On October 9, 2009, Trice's case was tried in a bench trial before Judge John H. Gasaway, III. Plaintiff was acquitted of all charges against her.

District Attorney General Morriss has submitted an affidavit stating that (1) neither McEachen nor Mason made the decision to investigate or prosecute Trice; (2) neither defendant made suggestions or recommendations to Morriss on whether to prosecute Trice; (3) neither defendant made suggestions or recommendations regarding what charges to bring against Trice; (4) neither defendant had any input in drafting the original or superseding indictment; and (5) in Morriss's opinion, there was probable cause to prosecute Trice, and Morriss still believes there was probable cause to prosecute Trice. (Morriss Aff. ¶¶ 2–3.)

## III.  ANALYSIS AND DISCUSSION

### A.  Plaintiff's § 1983 Act Claim

#### 1.  *Legal Standards*

Trice's claims are brought under 42 U.S.C. § 1983 which "by its terms does not create any substantive rights but rather merely provides remedies for deprivations of rights established elsewhere." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (internal quotation marks and citation omitted). To prevail on her § 1983 claims, Trice "must establish that a person acting under color of state law deprived her of a right secured by the Constitution or laws of the United States." *Waters v. City of Morristown*, 242 F.3d 353, 358–59 (6th Cir. 2001).

"The Supreme Court has held, however, that 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sample v. Bailey*, 409 F.3d 689, 695 (6th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "'The central purpose of affording public officials qualified immunity from suit is to protect them from undue interference with their duties and from potentially disabling threats of liability.'" *Id.* (quoting *Elder v. Holloway*, 510 U.S. 510, 514 (1994)) (internal quotation marks omitted). Once the issue is raised, the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity. *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

In reviewing claims for qualified immunity, courts generally conduct a two-step analysis. *See Scott v. Harris*, 550 U.S. 372, 377 (2007). First, we must consider whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a

constitutional right." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If the answer is yes, we next ask "whether the right was clearly established . . . in light of the specific context of the case." *Id.* (quoting *Saucier*, 533 U.S. at 201). "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (internal quotation marks and citations omitted). While the sequence of this two-step inquiry is often appropriate, it is no longer mandatory. *Pearson v. Callahan*, 555 U.S. 223, ----, 129 S. Ct. 808, 818 (2009).[3]

With these standards in mind, the Court turns to the parties' arguments.

### 2. Whether Defendants Are Entitled to Qualified Immunity from Plaintiff's First-Amendment-Retaliation Claim

Trice alleges that the decision to indict and prosecute her was motivated by her having complained about Officer Tate's behavior, including the expression of her belief that his conduct was motivated by racism.[4] The relevant question is whether Trice can establish that the challenged actions were in retaliation for her having complained about Officer Tate and therefore violated her constitutional rights. In that regard, the Sixth Circuit has stated:

> In order to prove a claim for retaliation, a plaintiff must establish the following elements: (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the

---

[3]  In addition to the two steps prescribed by the Supreme Court, "[s]ome panels of the Sixth Circuit have employed a third step requiring the court to determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional right." *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009) (citing *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003); *Sample v. Bailey*, 409 F.3d 689, 696 (6th Cir. 2005)). In *Grawey*, the Sixth Circuit concluded that the third step was redundant in excessive-force cases because the defendant's conduct must have been objectively unreasonable to justify a finding that a constitutional violation under the first step. *Grawey*, 567 F.3d at 309 (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The third step is likewise redundant here because the Court finds that no constitutional violation occurred in the first place.

[4]  It bears noting that the complaint in this matter was filed on February 23, 2010. As Defendants point out, in light of the one-year statute of limitations that applies to § 1983 actions in this state, Trice's claims cannot be based upon the Defendants' interview of Trice or the written statement resulting therefrom, as that encounter took place in November 2008. Nor can the claims be based upon the drafting and presentation of the original indictment, because McEachen presented the allegations to the grand jury on January 21, 2009, and the grand jury returned the indictment on January 22, 2009, again more than a year before the complaint was filed. Trice's argument relating to a "perjury trap" defense, even assuming the argument has any validity, is likewise unavailing because the argument relates to the interview that occurred more than a year prior to her filing this lawsuit. In the superseding indictment, all reference to the "sworn statement" was removed.

adverse action was motivated *at least in part* as a response to the exercise of the plaintiff's constitutional rights.

*Harris v. Bornhorst*, 513 F.3d 503, 518 (6th Cir. 2008) (quoting *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998)) (emphasis added). Further, however, in order to prove causation, the plaintiff in a retaliatory-prosecution action must plead and show the absence of probable cause for pressing the underlying criminal charges. *Hartman v. Moore*, 547 U.S. 250, 263 (2006) (resolving a circuit split on this issue). In *Hartman*, the plaintiff was the acquittee in a federal fraud prosecution who brought a *Bivens* action against federal officers who had allegedly induced his prosecution in retaliation for his criticism of the United States Postal Service, in violation of his First Amendment free speech rights. A *Bivens* action is the federal analog to suits brought against state officials under § 1983, *id.* at 254 n.2, and the Court made it clear that its decision was equally applicable to § 1983 actions against state officials. The Sixth Circuit has applied the holding in *Hartman* to conclude that police officers sued under § 1983 for First Amendment retaliation were entitled to qualified immunity on the grounds that the plaintiff could not establish the absence of probable cause in his underlying prosecution. *Barnes v. Wright*, 449 F.3d 709, 720 (6th Cir. 2006).

In the present case, although the plaintiff concedes that the absence of probable cause is an element of her claim, she denies that probable cause existed and specifically argues that the issuance of the indictment is not *per se* sufficient to establish the existence of probable cause. Unfortunately for Trice, federal law is not on her side of this dispute. It is well settled in the Sixth Circuit that "'the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer.'" *Id.* at 716 (quoting *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002)). In *Wright*, as here, the plaintiff argued that the "defendants misled the grand jury, which led to his improper arrest." *Id.* Because the indictment conclusively established probable cause, the court nonetheless concluded that the plaintiff "ha[d] no basis for his constitutional claims." *Id.* (quoting *Higgason*, 288 F.3d at 877). Moreover, contrary to Trice's arguments, the determination of whether probable cause existed does not appear to be governed by state law: The *Higgason* opinion relied upon *Ex parte United States*, 287 U.S. 241, 250 (1932), for its determination that probable cause was conclusively established by an indictment, and that the plaintiff in that case therefore had "no basis for his constitutional claim." *Higgason*, 299 F.3d at 877.

This Court is bound by that conclusion. Because Trice cannot prove causation, she cannot establish that she suffered a constitutional violation. As a result, the defendants are entitled to qualified immunity as to her First-Amendment-retaliation claim.

**B.      Plaintiff's Common-Law Malicious-Prosecution Claim**

The essential elements of the common-law tort of malicious prosecution under Tennessee law are that:  (1) a criminal proceeding has been instituted by the defendant against the plaintiff (2) without probable cause;[5] (3) the defendant brought the prior action with malice; and (4) the prior proceeding terminated in favor of the accused.  *Roberts v. Fed. Express Corp.*, 842 S.W.2d 246, 247–48 (Tenn. 1992); *see also Landers v. Kroger Co.*, 539 S.W.2d 130, 131–32 (Tenn. Ct. App. 1976) (citing *F. W. Woolworth Co. v. Connors*, 222 S.W. 1053 (Tenn. 1920); *Pharis v. Lambert*, 33 Tenn. 228 (1853)).  In the present case, Defendants argue that they were not responsible for "instituting" the criminal proceeding against Trice.  The Court agrees that Defendants are entitled to summary judgment in their favor on that basis.

Under Tennessee law, a person who "procures a third person to institute criminal proceedings against another" may be liable for malicious prosecution as if he had actually "initiated the proceedings." Restatement (Second) of Torts § 653, cmt. d (1977), *quoted in Smith v. Kwik Fuel Center*, No. E2005-00741-COA-R3-CV, 2006 WL 770469, at *6 (Tenn. Ct. App. March 27, 2006).  However, "*[t]he giving of the information or the making of the accusation . . . does not constitute a procurement of the proceedings that the third person initiates if it is left to the uncontrolled choice of the third person to bring the proceedings or not as he may see fit.*"  *Id.* (emphasis added).  Thus, as the Tennessee Court of Appeals noted in *Smith*, "'[w]hile it is not necessary that a person actually swear out the warrant to be liable [for malicious prosecution], something more than merely giving information must be shown.'"  *Smith*, 2006 WL 770469, at *7 (quoting *Wykle v. Valley Fidelity Bank & Trust Co.*, 658 S.W.2d 96, 98 (Tenn. Ct. App. 1983)).

With respect to the "giving of information," the Tennessee Court of Appeals has further observed

---

[5] Tennessee law further differs from federal law in that, under Tennessee law, the existence of a duly issued grand jury indictment is not conclusive proof of probable cause.  *See Kerney v. Aetna Cas. & Sur. Co.*, 648 S.W.2d 247, 252 (Tenn. Ct. App. 1982) ("We decline . . . to adopt the rule that 'the indictment of the accused by a grand jury, if unexplained, is evidence that the person who initiated the proceedings had probable cause therefor.'"  (quoting 52 Am. Jur.2d Malicious Prosecution § 177 (1970)).

that "[o]ne who causes another's prosecution by false statements or misrepresentations" may be liable for malicious prosecution, even if "he does not file a complaint or actually procure the prosecution." *Davis v. Tenn. Wildlife Res. Agency*, No. W2005-00406-COA-R3-CV, 2006 WL 861352, *5 (Tenn. Ct. App. April 5, 2006) (quoting *Cohen v. Ferguson*, 336 S.W.2d 949, 954 (Tenn. Ct. App. 1959) (citing 54 C.J.S. Malicious Prosecution § 17)).  On the other hand, when a person "discloses in good faith . . . all facts within his knowledge having a material bearing on the question of the guilt of the person suspected and leaves it to the officer to act entirely on his own judgment and responsibility as a public officer as to whether or not there shall be a criminal prosecution, he is not liable in an action for malicious prosecution. . . ." *Id.* (quoting *Cohen*, 336 S.W.2d at 954).

In the present case, Trice attempts to raise an inference that McEachen or Mason presented false information either to the grand jury or to District Attorney General Morriss, thereby influencing or contributing to the decision to prosecute.  The record evidence available to the Court does not support such an inference, however.  Defendants have both testified that they provided a complete accounting of all facts within their possession to Morriss, including that they had arrived unannounced at Trice's home on the evening of November 26, 2008 and that she refused to sign the affidavit accompanying her statement after she had already approved the form of the written statement and initialed and signed the statement itself.  Trice herself has testified that the facts set forth in the written statement are true, and that she did in fact initial and sign the statement prior to refusing to sign the affidavit.  In addition, Morriss has testified that Defendants were responding to a request from his office, made to their superiors, that the TBI investigate Trice's complaint against Officer Tate, and that neither defendant made or contributed to the decision to investigate or prosecute Trice, made suggestions or recommendations on whether to prosecute Trice or what charges to bring, or assisted in any way in drafting the original or superseding indictment.  Further, Morriss maintains that his office alone made the decision to prosecute, determined what charges to bring, and drafted the original and superseding indictments.

Although the plaintiff quibbles about the language of the indictments, in particular about whether Trice actually made a "sworn" statement and about whether she "initiated" the statement to the TBI, the Court finds that these issues are not material.  First, regardless of Trice's refusal to sign the actual affidavit, Defendants were not unreasonable in believing that Trice had made a "sworn" statement, even if

the district attorney's office ultimately concluded that the statutory requirements were not met. Second, Trice arguably "initiated" contact with law enforcement by repeatedly contacting the Police Department before being told that her complaint had been referred to the TBI and that the TBI would contact her. Finally, again, Defendants did not draft and were not responsible for the language of the indictments and did not have the responsibility to compare the language used in the indictments with the language used in the statutes under which Trice was charged. The district attorney's office was solely responsible for undertaking that analysis.

Consequently, based on the undisputed facts and circumstances presented here, the Court concludes that Defendants disclosed "all facts within [their] knowledge having a material bearing on the question of the guilt of [Trice] and [left] it to [Morriss] to act entirely on his own judgment and responsibility as a public officer as to whether or not there shall be a criminal prosecution." *Davis*, 2006 WL 861352, *5. As a result, they cannot be "liable in an action for malicious prosecution." *Id.*

## IV. CONCLUSION

For the reasons set forth herein, the Court finds that Defendants are entitled to summary judgment in their favor. The motion will therefore be granted and the plaintiff's complaint dismissed. An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge